Anthony Wills (326390)
awills@willslegacy.law
1230 Rosecrans Ave. Ste 300
Manhattan Beach, CA 90266
Deon Thomas (3696546)
deon@deonthomaslaw.com
Jonathan H. Cox (28983)
jhc@coxpradialaw.com
Troy J. Pradia (30260)
tjp@coxpradialaw.com
2402 Rosedale Street
Houston, Texas 77004
Telephone: 346.754.5645
Facsimile: 3467545898

**Attorneys for Plaintiff DAMON ANDREWS, Individually**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Damon Andrews, Individually | Case No. |
| *Plaintiff* | COMPLAINT FOR DAMAGES |
| | (Product Liability/ Exploding E-Cigarette Products) |
| v. | 1.   Strict Product Liability: Design Defect; |
| SHENZHEN KANGSIDE TECHNOLOGY CO., LTD.; ANKER TECHNOLOGY CORPORATION; ANKER TECHNOLOGY CO., LIMITED; SMOKTECH IVPS TECHNOLOGY CO., LTD; VAPOR CLOUD 9 INC; and DOES 1 through 10, inclusive, | 2.   Strict Product Liability: Failure to Warn; |
| | 3.   Negligence; |
| | 4.   Breach of Implied Warranty of Merchantability; |

COMES NOW Plaintiff DAMON ANDREWS, individually

("Plaintiff"), by and through his counsel, and alleges as follows:

*/ / /*

**INTRODUCTION**

1.      DAMON ANDREWS purchased an electronic cigarette and related parts.

The Defendants are the manufacturers, wholesalers, distributors, and retailers of electronic cigarettes and related parts. On December 17, 2021, DAMON ANDREWS was in his hotel room when suddenly his e-cigarette and related parts exploded, launching a projectile into his leg and thigh, and catching the dwelling on fire. DAMON ANDREWS suffered third-degree burns.

2.      Electronic cigarettes, or e-cigarettes as they are more commonly known, claim to provide a tobacco-free alternative to the traditional cigarette. E-cigarettes offer doses of nicotine with a vaporized solution, providing a physical sensation like tobacco smoke, supposedly without the harmful effects of actual tobacco or smoke. E-cigarettes also offer non-nicotine flavors, coming in enticing varieties such as gummy bear, vanilla, and blueberry pancake. Using e-cigarettes is known as "vaping," and users are known as "vapers." In addition to the e-cigarette used by DAMON ANDREWS, Defendants manufacture, design, and sell a variety of other e- cigarette products.

3.      All e-cigarettes operate basically the same way. They consist of three parts: a tank or cartridge, a battery, which works to heat the liquid nicotine or other chemicals (often called "juices" or "e-liquids") contained in the tank or cartridge, and an atomizer, which converts the contents of the liquid-filled cartridge into vapor that the user then inhales. Some batteries are rechargeable, and some are disposable. The batteries are cylinder lithium-ion batteries. Some e-cigarettes are closed systems, in which pre-filled cartridges are used. There are also open systems, where a user can manually refill a cartridge. E-cigarettes come in pen form (modeled after a traditional cigarette) and mods—devices, either mechanical or electrical, that are heavier and carry a much higher capacity for juice and vapor. There are many different types of mods, some of which require the use of coils that require installation before or after purchase.

**PARTIES**

4.     PLAINTIFF DAMON ANDREWS, individually is an adult individual citizen of the State of Texas, residing therein at 512 Timber Shade Dr., Kingwood, Texas 77345.

5.     Defendant SHENZHEN KANGSIDE TECHNOLOGY CO., LTD. was at all relevant times a foreign entity of unknown form located in Shenzhen, China, which does business in the State of California.

6.     Defendant ANKER TECHNOLOGY CORPORATION was at all relevant times a Delaware corporation with its principal place of business and headquarters, in Santa Clara County, California.

7.     Defendant ANKER TECHNOLOGY CO., LIMITED was at all relevant times a foreign entity of unknown form located in Kowloon, Hong Kong, which does business in the State of California.

8.     Defendants SHENZHEN KANGSIDE TECHNOLOGY CO., LTD.,

ANKER TECHNOLOGY CORPORATION, ANKER TECHNOLOGY CO., LIMITED, SMOKTECH IVPS TECHNOLOGY CO., LTD, and DOES 1 through 6, designed, manufactured, marketed, distributed, and sold the subject e-cigarette and components (including mod, battery, and charger).

9.     Defendant CLOUD 9 VAPOR LOUNGE is a storefront retail seller of e-cigarettes and components (including mod, battery, and charger) located at 4019 N. Illinois #300, Swansea, IL 62226, which does business in the State of California.

10.     Defendants CLOUD 9 VAPOR LOUNGE, and DOES 7 through 10, were the storefront retail sellers of the subject e-cigarette and components (including mod, battery, and charger).

11.     Plaintiff sues fictitious Defendants DOES 1 through 10 because their names and/or capacities and/or facts showing them to be liable to Plaintiff are not presently known. Plaintiff will seek leave to amend this Complaint if necessary to reflect the true names and capacities of such fictitious Defendants when ascertained. Plaintiff is informed and believes and thereon

alleges that each of the fictitiously named Defendants are negligent or responsible in some manner for the events herein alleged.

12.     Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein the Defendants, and each of them, were the agents, servants, employees, and joint venturers of each other, and were as such acting within the course, scope and authority of said agency and employment and or joint venture, and that each and every Defendant, when acting as a principal, was negligent and reckless in the selection, hiring, entrustment and supervision of each and every other Defendant as an agent, servant, employee, or joint venturer.

13.     Defendants, SHENZHEN KANGSIDE TECHNOLOGY CO., LTD., ANKER TECHNOLOGY CORPORATION, ANKER TECHNOLOGY CO., LIMITED, SMOKTECH IVPS TECHNOLOGY CO., LTD, VAPOR CLOUD INC., D/B/A CLOUD 9 VAPOR LOUNGE, and DOES 1 through 10 shall hereinafter be referred to as "Defendants."

### JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

15.     This Court has specific personal jurisdiction over the Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in California, the Defendants are authorized to do business in California, the Defendants have minimum contacts with California, and/or the Defendants otherwise intentionally availed themselves of the markets in California through the promotion, marketing, distribution, and sale of their products in California, each of which are sufficient bases to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16.     This Court has general personal jurisdiction over   Defendants,   where   the   incident occurred

a.      because said defendants have their headquarters, principal place of business, and place of incorporation located in the State of California, within the Northern District of California.

b.    the explosion and fire of the e-cigarette products at the basis of this suit occurred in Martinez, California.

17.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Northern District of California, where Defendants where the incident occurred.

## FACTUAL BACKGROUND

### A.    Background of E-Cigarettes

18.    While e-cigarettes were first patented in 2003, they entered the market solely in China in 2004 and did not first appear in the United States until 2007. Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2014. Some media sources report that industry experts predict that the e-cigarette industry will become an $85 billion industry within a decade and surpass the tobacco industry. (See Clarke, Toni, "Reports of e-cigarette injury jump amid rising popularity, United States data show,"

Reuters.com, April 17, 2014.)

19.    E-cigarettes carry mass appeal to consumers, as they are heavily advertised and offer a cheaper alternative to smoking. There are currently hundreds of brands of e-cigarettes on the market, and since e-cigarette marketing is completely unfettered and unregulated (unlike tobacco marketing), e-cigarette products reach minors and people who would never smoke a traditional cigarette, but who are nevertheless intrigued by e-cigarettes. The variety of flavors offered, including root beer float, bubble gum, and cotton candy, further target and spark the intrigue of minors. Finally, e-cigarette advertisements are unrestricted, appearing on television and radio, where tobacco advertisements have been banned for more than 40 years. E-cigarettes simply have the ability to reach a broader consumer base than traditional cigarettes.

20.    E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic components. While both products may produce a similar physical sensation, e-

cigarettes pose an additional danger—the battery- powered heating element can cause, and has caused, explosions, fires, and serious injuries.

21.     Lithium-ion batteries, commonly used in all types of e-cigarettes, have an inherent risk of fire and explosion. Combining lithium-ion batteries with a heating element poses serious dangers and risks. According to a medical case report, a man in New Jersey had an e-cigarette explode in his pocket, ignite his pants on fire, and cause him severe burns. The case report further highlighted the inherent danger of lithium-ion batteries and pointed to research that recognized that the "poor design, use of low-quality materials, manufacturing flaws and defects, and improper use and

handling can all contribute to a condition known as 'thermal runaway,' whereby the internal battery temperature can increase to the point of causing a battery fire or explosion." (Id. citing Brown CM, Cheng JM. "Electronic Cigarettes: Product Characterization and Design Considerations," Tobacco Control, 2014.) The medical case report noted that as the industry grows, "the potential for serious burn injuries related to device malfunction is of concern." ("Spontaneous Electronic Cigarette Explosion: A Case Report," American Journal of Medical Case Reports, 2015, Vol. 3, No. 4, 93-94, 94.)

22.     There has been much debate over the supposed "safety" of e-cigarettes. Many claim e-cigarettes are a safer alternative to traditional cigarettes because e- cigarettes (1) do not contain tobacco; (2) do not create smoke for a person to inhale; and (3) do not pose as high of a risk for second-hand smoke inhalation. This supposed "safer" alternative to traditional cigarettes is still under debate because e- juice contains nicotine—a neurotoxin which is extremely addictive—and other chemicals which are likely to have long-term health effects that are still unknown, since e-cigarette technology is relatively new.

23.     The e-cigarette industry carries mass appeal to manufacturers, distributors, and sellers because the cost of production is low and the return on profits is high. Manufacturers, distributors, and sellers also profit from these products because of the lack of regulatory oversight at the federal, state, and local level. (See Tobacco Control Legal Consortium,

"Regulating Electronic Cigarettes and Similar Devices," Updated August 2015). Currently, manufacturers, distributors, and sellers

are not required to spend any money on testing or to otherwise ensure the safety of the products. This unregulated environment creates an industry that is full of lucrative business opportunities. And injured consumers.

24.     China continues to be a major producer of e-cigarettes. It was estimated that more than 300 million e-cigarettes would be shipped from China to the United States and Europe in 2015. (Barboza, David, "China's E-Cigarette Boom Lacks Oversight for Safety," New York Times, Dec. 13, 2014). Many of these products are shipped from China and placed directly into the stream of commerce in the United States without any knowledge as to the composition, design, or safety of the products. Most United States' distributors choose to import e-cigarettes from China because of

the low cost and non-existent quality control.

25.     Only a few federal regulations have been proposed or promulgated regarding e-cigarettes. While the United States Department of Transportation and the Food and Drug Administration have taken important first steps, none of these regulations deal with the safety of the actual device itself. Currently, e-cigarettes are not subject to any manufacturing or quality control standards at the federal, state, or local level.

26.     E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device. Thus, when the device malfunctions or fails, the battery can be shot out like a bullet or rocket. (United States Fire Administration, "Electronic Cigarette Fires and Explosions," October 2014, at 5). There are different methods to protect against these batteries, but because of a lack of regulation, the protections are left up to the e-cigarette manufacturers. (Id. at 6.)

27.     The explosion of DAMON ANDREWS's e-cigarette product is not a novel occurrence; e-cigarettes have caused fires and explosions which have injured many consumers.

28.     Complaints of injury caused by e-cigarettes continue to rise as the devices become more popular. These products continue to be placed into the stream of commerce despite being untested and unsafe. E-cigarettes will continue to cause these types of injuries unless and until those placing them in the stream of commerce are held accountable. Even industry proponents, such as the Electronic Cigarette Industry Group, acknowledge that no universal method of testing e-cigarettes has been adopted. The case of DAMON ANDREWS illustrates why this should change.

### B.     The Explosion that Caused Injury to DAMON ANDREWS

29.     In 2021, DAMON ANDREWS purchased the e-cigarette and components consisting of a lithium-ion battery, a lithium-ion battery charger, and a mod and accessories from the Defendants. These products will be collectively referred to herein as the "E-Cig Products."

30.     The E-Cig Products were manufactured, wholesaled, distributed, and Retailed by Defendants.

31.     On December 17, 2021, DAMON ANDREWS was at Best Western located in Martinez California when suddenly his e-cigarette battery exploded, in his pocket launching causing third-degree burns to his leg and thigh.

32.     The explosion and DAMON ANDREWS's resulting injuries were caused by the defective E-Cig Products, as well as the Defendants' negligence.


### FIRST CLAIM FOR RELIEF

### Strict Product Liability: Design Defect

33.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this claim for relief.

34.     At all times mentioned herein, Defendants were engaged in the business of manufacturing, fabricating, designing,        assembling,    supplying,    distributing,    selling, inspecting, warranting, leasing, renting, retailing, wholesaling, and advertising the E- Cig Products DAMON ANDREWS purchased and used on December 17, 2021.

35.     On December 17, 2021, as DAMON ANDREWS was using the E-Cig Products in a reasonably foreseeable and intended manner, the E-Cig Products suddenly exploded, causing DAMON ANDREWS severe injuries and third-degree burns. The E-Cig products purchased and used by DAMON ANDREWS on December 17, 2021 possessed a design defect. The defect in design existed at the time it left the Defendants possession.

36.     Defendants knew that consumers would use the E-Cig Products as DAMON ANDREWS did on December 17, 2021.

37.     Defendants manufactured, designed, assembled, packaged, tested, fabricated, inspected, marketed, distributed, and sold the E-Cig Products and each of their component parts with defects in design which made them dangerous, hazardous, and unsafe for their intended and reasonably foreseeable use.

38.     The design defects in the E-Cig Products included defective and unsafe characteristics, which resulted in excessive overheating of the E-Cig Products, causing them to catch fire during intended use and in the course of non-use.

39.     The E-Cig Products contained design defects when the E-Cig Products were introduced into the stream of commerce by Defendants.

40.     The E-Cig Products were defective and unsafe for their intended use. Due to the design defects, the E-Cig Products failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

41.     Furthermore, the risk of danger in the design of the E-Cig Products outweighed any benefits of the design, and safer alternative designs were available at the time of manufacture. Therefore, the E-Cig Products presented a substantial and unreasonable risk of serious injuries to users of said E-Cig Products or those in the vicinity of use.

42.     The defects in the design of the E-Cig Products and its component parts were a substantial factor in causing DAMON ANDREWS's severe injuries and Plaintiff's damages as herein alleged.

43.     As a result of the defective E-Cig Products, DAMON ANDREWS sustained severe personal injuries, third-degree burns, and Plaintiff suffered damages, as alleged herein:

a)     DAMON ANDREWS, suffered great mental, physical, and emotional pain, in sums according to proof at the time of trial;

 b) Plaintiff incurred medical, property damage, and other damages, in sums according to proof at the time of trial;

c) Plaintiff incurred economic losses including past and future loss of earnings and diminished earning capacity, in an amount according to proof at the time of trial.

44.     Defendants are strictly liable to Plaintiff for the injuries complained of herein by reason of having sold and placed into the stream of commerce defective E- Cig Products, including but not limited to mods, batteries, and chargers, which were unreasonably dangerous to users.

45.     WHEREFORE, Plaintiff demands judgment for damages generally against the Defendants, individually, jointly, severally, or in the alternative, in excess of the jurisdictional limitations of this Court, together with interest and costs of suit.

## SECOND CLAIM FOR RELIEF

### Strict Product Liability: Failure to Warn

46.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this claim for relief.

47.     At all times mentioned herein, Defendants were engaged in the business of manufacturing, fabricating, designing,        assembling,    supplying,    distributing,    selling, inspecting, warranting, leasing, renting, retailing, wholesaling, and advertising the E- Cig Products DAMON ANDREWS purchased and used.

48.     On December 17,2021, as DAMON ANDREWS was using the E-Cig Products in a reasonably foreseeable and intended manner, the E-Cig Products suddenly exploded, causing severe injuries and third-degree burns.

49.     Defendants knew that consumers would use the E-Cig Products as DAMON ANDREWS did on December 17, 2021.

50.     An ordinary consumer, such as DAMON ANDREWS, would not have readily recognized the potential risks and dangers inherent in the E-Cig Products and the danger of the E-Cigs exploding or catching fire was known or knowable by the Defendants in light of the generally recognized and prevailing best scientific knowledge available at the time of the manufacture and distribution.

51.     Defendants failed to warn of the dangers in the reasonably foreseeable use of the E-Cig Products. It was reasonably foreseeable that the use of the product involved a substantial danger of which the Defendants were aware or should have been aware and such danger would not have been readily recognized by DAMON ANDREWS. Nowhere does the product or packaging warn of the risk of explosion. There were simply no warnings about the hazards inherent in E- Cig Products.

52.     Defendants' failure to warn of the risks, and lack of instructions on safe use, were a substantial cause of DAMON ANDREWS'S severe injuries and damage as herein alleged.

53.     As a result of Defendants' failure to warn, DAMON ANDREWS sustained severe personal injuries, third-degree burns, and Plaintiff suffered damages, as alleged herein:

a) DAMON ANDREWS, suffered great mental, physical, and emotional pain, in sums according to proof at the time of trial;

 b) Plaintiff incurred medical, property damage, and other damages, in sums according to proof at the time of trial;

c) Plaintiff incurred economic losses including past and future loss of earnings and diminished earning capacity, in an amount according to proof at the time of trial.

54.     WHEREFORE, Plaintiff demands judgment for damages generally against the Defendants, individually, jointly, severally, or in the alternative, in excess of the jurisdictional limitations of this Court, together with interest and costs of suit.

### **THIRD CLAIM FOR RELIEF**

### **Negligence**

55.     Plaintiff refers to each and every preceding paragraph and incorporates

those paragraphs as though set forth in full in this cause of action.

56.     Defendants    negligently,    recklessly,    and    carelessly manufactured, fabricated, designed, assembled, supplied, distributed, sold, inspected, warranted, and advertised the E-Cig Products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

57.     Defendants owed a duty to DAMON ANDREWS to exercise reasonable care in the design, manufacture, and sale of the E-Cig Products, to ensure the E-Cig Products were safe for their reasonably foreseeable use.

58.     Defendants failed to exercise the amount of care in the design, manufacture, and sale of the E-Cig Products, that a reasonably careful manufacturer, designer, seller, wholesaler, or distributor would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

59.     Defendants knew or reasonably should have known that the E-Cig Products were dangerous when used or misused in a reasonably foreseeable manner. Defendants had reason to know that E-Cig Products were dangerous or likely to be dangerous for the use for which they were manufactured or supplied because the danger was known or knowable by the Defendants in light of the generally recognized and prevailing best scientific knowledge available at the time of the manufacture and distribution. A designer or manufacturer of a product that is reasonably certain to be dangerous if negligently made, has a duty to exercise reasonable care in the design, manufacture, and testing and inspection of the product and the testing and inspection of any component parts made by another so that the product may be safely used in a manner and for a purpose for which it was made. The Defendants failed to fulfill this duty owed to consumers, including DAMON ANDREWS.

60.     Defendants knew or reasonably should have known that users such as DAMON ANDREWS would not realize the danger of explosion and/or fire with use of the E-Cig Products.

61.    Defendants failed to exercise reasonable care to give warning of the dangerous condition of explosions or fire to those whom the Defendants should expect to use the product or be endangered by its probable use.

62.    A reasonable manufacturer, designer, seller, wholesaler, or distributor under the same or similar circumstances would have warned of the danger or instructed on safe use of the product.

63.    Defendants' failure to warn or instruct was a substantial factor in causing DAMON ANDREWS'S serve injuries.

64.    As a proximate result of said negligent conduct, Plaintiff suffered injuries as previously alleged. The negligence of Defendants was a substantial factor in causing the explosion, fire, and serious injuries, DAMON ANDREWS as previously alleged.

65.    Plaintiff incorporates by reference the damage allegations of all paragraphs alleged against Defendants, as though fully set forth herein.

66.    WHEREFORE, Plaintiff demands judgment for damages generally against the Defendants, individually, jointly, severally, or in the alternative, in excess of the jurisdictional limitations of this Court, together with interest and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

67.    Plaintiff incorporates  by reference and realleged all paragraphs

previously alleged herein.

68.    Prior to the time of the subject incident, the Defendants impliedly warranted to members of the general public, including DAMON ANDREWS, that the E-Cig Products were of merchantable quality.

69.    Members of the consuming public, including consumers such as DAMON ANDREWS, were intended third-party beneficiaries of the implied warranty of merchantability.

70.    DAMON ANDREWS and Plaintiff relied on the skill and judgment of Defendants in the purchase, selection, and use of the E-Cig Products as a safe consumer product.

71.     The subject E-Cig Products were not of merchantable quality as warranted by Defendants, in that they were defectively      designed, thereby dangerously exposing the users of said products and those around them to serious injury. The E-Cig Products were also not of merchantable quality as warranted because the E-Cig Products were not fit for the ordinary purposes for which such goods were used, and the E-Cig Products were not adequately labeled.

72.     After DAMON ANDREWS received the injuries complained of herein, notice was given by Plaintiff to Defendants, by filing this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

73.     As a legal and proximate result of the breach of said implied warranty, Plaintiff sustained the damages herein set forth.

74.     Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

75.     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief:

A.     For general damages, in an amount to be proven at the time of trial;

B.     For medical, Incidental, hospital, psychological care, and other; expenses, in the amount to be proven at the time of trial;

C.     For property damage and property loss';

D.     For loss of earnings and earning capacity, in an amount to be proven at the time of trial;

E.     For an award of pre-judgment and post-judgment interest as provided by law; of trial; proper.

F.     For consequential damages, in an amount to be proven at the time

G.     For an award providing for payment of costs of suit;

H.     For such other and further relief as this Court may deem just and proper.

Dated: June 21, 2023, Law Office of Deon Thomas

*By:/s/ Anthony Wills*
Anthony Wills (326390)
awills@willslegacy.law
1230 Rosecrans Ave. Ste 300
Manhattan Beach, CA 90266

Deon Thomas (Fed No.)
deon@deonthomaslaw.com
Jonathan H. Cox (28983)
jch@coxpradialaw.com
Troy J. Pradia (30260)
tjp@coxpradialaw.com
2402 Rosedale Street
Houston, Texas 77004
Telephone: 346.754.5645
Facsimile: 3467545898
**Attorneys for Plaintiff DAMON ANDREWS, Individually**

## **DEMAND FOR JURY TRIAL**

Plaintiff DAMON ANDREWS individually hereby demands a trial by jury on all issues that may

be tried by a jury.

Dated: June 21, 2023,  Law Office of Deon Thomas

*By:/s/ Anthony Wills*
Anthony Wills (326390)
awills@willslegacy.law
1230 Rosecrans Ave. Ste 300
Manhattan Beach, CA 90266

Deon Thomas (3696546)
deon@deonthomaslaw.com
Jonathan H. Cox (28983)
jhc@coxpradialaw.com
Troy J. Pradia (30260)
tjp@coxpradialaw.com
2402 Rosedale Street
Houston, Texas 77004
Telephone: 346.754.5645
Facsimile: 3467545898
**Attorneys for Plaintiff DAMON ANDREWS, Individually**